FRONTIER-EMBERS SUPPER CLUB, INC.,
Appellant-Appellant, v. BOARD OF LIQUOR CONTROL
OF THE STATE OF OHIO, Appellee-Appellee.

Ohio Appeals, Tenth District, Franklin County.

No. 6387.   Decided July 29, 1960.

*Messrs. Videan & Dixon* and *Mr. James M. Videan,* for
appellant-appellant.
*Mr. Mark McElroy,* attorney general, and *Mr. Michael
Kouskouris,* assistant attorney general, for appellee-appellee.

(McLaughlin, J., of the Fifth District, sitting by designa-
tion in the Tenth District.)

For further history see *Omnibus
Index* in bound volume.

Bryant, P. J.   The sole question in this case is whether
or not the renewal application of Frontier-Embers Supper
Club, Inc., Toledo, Ohio, appellant, herein called Embers, seek-

ing to renew their Class D-5 liquor permit was filed within the thirty-day grace period after the expiration of their former permit. The Department of Liquor Control held that the renewal application was filed one day late, and on successive appeals, the Board of Liquor Control, appellee, and the Court of Common Pleas of Franklin County sustained the action of the Department.

The Liquor Control Act, Section 4303.27, Revised Code, provides that each permit shall be valid for "one year commencing on the day after the date of its issuance, and no longer." Thus, it was of high importance to know the date on which the permit was effective, thus causing the year to commence, but as to this, the record is silent.

In August 1958, the building which housed Embers' Supper Club was destroyed by fire and only one wall was left standing. Embers' liquor permit was destroyed as were its books, papers and records. Being unable to continue in business, Embers obtained a duplicate permit which was placed with the Department for safekeeping.

The Liquor Control Act in Section 4303.271, Revised Code, provides that renewal applications shall be filed with the Department by the permit holder "at least 15 days prior to the expiration of an existing permit," and then makes provision for a thirty-day grace period after the expiration of an existing permit, but with a penalty of ten percent in addition to the regular permit fee.

From a statement by counsel for Embers to the Board, it appears that Embers did nothing toward filing the renewal application until February 16, 1959, when with the renewal application, the permit fee and the penalty, the attorney for Embers traveled from Toledo, Ohio, to the offices of the Department in Columbus. Those offices close at 4:45 P. M., and on the day in question, inclement weather delayed Embers' attorney and he did not arrive at the offices until 4:55 P. M., ten minutes after closing time. The attorney gained admission to the offices, but was unable to get anyone to accept either the application or the money. He returned the following day, February 17, 1959, filed the application and paid the permit fee and penalty.

On March 17, 1959, the Department rejected the renewal application upon the sole ground that it should have been filed on or before February 16, 1959, and that February 16 was the thirtieth and final date for filing.

Embers filed an appeal within time to the Board of Liquor Control, which affirmed the Department. Embers then appealed to the Court of Common Pleas of Franklin County, which court found that the Board's order was sustained by reliable, probative and substantial evidence and was in accordance with law. The court then dismissed the appeal.

Embers then appealed to this court on questions of law and fact, but by agreed entry, the appeal was reduced to an appeal on questions of law.

Two errors are assigned. The first is that the court below erred in sustaining the order of the Board of Liquor Control and in failing to hold that the renewal application of Embers filed on February 17, 1959, was filed within the thirty-day grace period. The second error assigned is that the court below erred in failing and refusing to hold that late filing of an application for the renewal of a permit cannot be sufficient ground for refusing to renew a permit.

As to the second error, we do not believe it is well grounded. We believe the State has a right to insist upon the prompt payment of permit fees within reasonable limits. In fact, it is only in recent years that the thirty-day grace period was allowed. The second assignment of error will be overruled.

The first assignment of error involves these questions: (a) Was the order of the Board sustained by reliable, probative and substantial evidence? (b) Was February 17, 1959, within the thirty-day penalty grace period provided by Section 4303.271 Revised Code, supra? (c) If February 16, 1959, was the last day to file, were Embers' rights terminated by the closing of the Department offices at 4:45 P. M.? (d) Is the reviewing court limited or confined to the record as certified to it by the agency?

As pointed out earlier, it is of first importance in a case such as this to know when the old permit became effective, and incidentally when it was issued, to determine the meaning of the language in Section 4307.27, Revised Code, "one year com-

mencing on the day after the date of its issuance, and no longer.''

In the complete record of the proceeding before the Board, it shows that counsel for the Department read into the record extracts from the rejection order issued by the Department and on page three of the record it is stated (lines 1 and 2), "that the expiration date of the subject class D-5 permit was January 17, 1959.''

Also in the complete record, page ten, the order made by the Board affirming the rejection of the renewal application, contains the statement, "that the permit expired on January 17, 1959.''

In the opinion of the court below, page one, it is stated: "There is no dispute about the fact that the appellant's permit expired on January 17, 1959.''

In view of the provisions of Section 4303.27, Revised Code, supra, quoted above, we have concluded that the one-year period comprising the life of a liquor permit begins at the first instant after midnight and ends at midnight a year later. By that reasoning a permit would have a life of a full 365 days in an ordinary year and each day would be a full 24 hours.

The word, "expire," as used here would seem to mean to emit the last gasp of breath, to die, to terminate, due to the passage of time. It would appear therefore that Embers' Class D-5 permit expired at midnight on January 17, 1959.

It seems clear to us therefore that the first day following the expiration of the permit was January 18, 1959, and if that day may be counted, then the contentions of the Department, the Board and the Court below are correct in so far as they hold that February 16, 1959, was the thirtieth and final day of the grace period.

But was February 16 the final day within the meaning of the phrase, "at any time within thirty days from the date of the expired permit," as used in Section 4303.271, Revised Code, supra, fixing the limits of the grace period?

All parties are agreed that in computing periods of time such as this, the provisions of Section 1.14, Revised Code, are applicable. This section provides:

"The time within which an act is required by law to be

done shall be computed by excluding the first and including the last day; except that the last day shall be excluded if it falls on Sunday.''

We assume the phrase, ''from the date of the expired permit,'' as used in Section 4303.271, Revised Code, supra, means that period of time immediately following the expiration or death of the old permit and does not include any part of the 365 days making up the life of the permit.

The act in this case was the filing of an application for the renewal of a Class D-5 permit and the period is composed of thirty days after such expiration.

If we give Section 1.14, Revised Code, supra, its plain, ordinary meaning in computing the thirty-day period, we must omit January 18 entirely because it is the first day of the period. It follows that January 19, 1959, becomes the first day of the period and February 17, 1959, is the thirtieth and final day of the period. In as much as Embers' renewal application was filed on February 17, 1959, it was filed in time and the renewal permit should be issued.

In view of the conclusion we have reached, it will serve no useful purpose to consider the effect of the steps taken by Embers on February 16, 1959, and no opinion is expressed with reference to them.

As this case may be the subject of further review, we consider it desirable to decide (a) whether or not the court below was correct in determining that the order of the Board was supported by reliable, probative and substantial evidence, and (b) whether the reviewing court is limited or confined to the record as certified to it by the agency, in this case, the Board of Liquor Control.

It seems clear that the matter was disputed before the Board, and without reference to the validity of the reasons, Embers' counsel made repeated requests of the Board to reverse the Department and order the renewal permit issued.

This hearing was subject to the provisions of the Administrative Procedure Act. Section 119.12, Revised Code, provides in part as follows:

''* * * the agency shall prepare and certify to the court *a complete record of the proceedings* in the case. * * * The

agency shall furnish * * * a copy of the stenographic report of testimony offered and evidence submitted at the hearing and a copy of the complete record.

"Unless otherwise provided by law, *in the hearing of the appeal, the court is confined to the record as certified to it by the agency.*" (Emphasis added.)

The hearing was conducted ostensibly in conformity with the rules of the Board relative to procedure at such hearings known as Regulation No. 65. There are three parts or sections of this regulation which are of interest here: (a) Section V providing that in all cases, the burden of proof shall rest upon the Department; (b) Section III requiring the Department first to produce its evidence, followed by that of the appellant, and (c) Section IV adopting the rules of evidence and the burden of proof as applied by Ohio courts in civil cases to all cases before the Board.

The complete record in this case consists of ten typewritten pages. It is certified at the end "that the attached transcript is a true, correct and complete copy of the proceedings and testimony, together with all exhibits, offered before the Board of Liquor Control, * * *."

The Department opened the hearing and rested at the bottom of the third page. No witness was called, sworn or unsworn. No exhibit of any kind was offered or received in evidence.

Counsel for the Department read into the record a part of what was called a "rejection order." It was never offered or admitted into evidence. Elsewhere in the file is a mimeographed page which may be the order from which parts were read. This mimeographed page is unsigned, unidentified, and of course is no part of the record certified as complete by the agency.

If counsel for the Department was reading from the unsigned mimeographed page, it is noted that only part of the so-called order was read. Before the Department rested, the Board was informed that the parties had agreed upon a stipulation as to the facts. Unfortunately no part of that stipulation ever got into the record.

Embers had been the holder of a Class D-5 permit and

had it filed its renewal application fifteen days before the permit expired, would have had a right to a renewal and the Department would have been under a duty to issue a renewal permit unless "good cause" could be shown for refusing to issue it.

If, in fact, there were such a stipulation as contended in the two briefs filed by counsel for Embers, the stipulation belonged in the so-called complete record. About the only thing in the record before the Board was a partial reference to the rejection order.

In case of the rejection order, a fully executed original of such order was the best evidence of what it contained. In our opinion the order of the Board was not supported by reliable, probative and substantial evidence and the court below should have so held.

In conclusion, the court below as the reviewing court is bound by the record certified to it by the Board and if such record is deficient, must so determine.

DUFFY and McLAUGHLIN, JJ., concur.