JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant State of Ohio ("state") appeals from the decision of the Cuyahoga County Court of Common Pleas which granted a motion to suppress in favor of defendant-appellee Tony Alexander ("Alexander"). Finding error in the proceedings below, we reverse and remand
 {¶ 2} The following facts give rise to this appeal. On June 25, 2003, at approximately 7:58 p.m., while patrolling the area of Caine Road in Cleveland, Officers Brian Koehl and Robert Albertini observed a gray vehicle traveling in the opposite direction pass their zone car. Officer Koehl noted the front license plate number to compare it to their "hot sheet" list which identifies possible stolen vehicles. After the vehicle passed, Officer Albertini noticed that the rear license plate had a June 2003 expiration sticker. Since the date was now June 25, 2003, the officers checked the plate through their Mobile Data Terminal ("MDT") and discovered that the sticker expired on June 6, 2003. In addition, the MDT check revealed that the owner of the vehicle, Alexander, did not have a valid license. At this point, the officers lost sight of the vehicle but continued to patrol the area.
 {¶ 3} Within two minutes of the initial encounter, the officers again saw the same gray vehicle, now stopped at the side of the road at East 137th and Beachwood. Acting on the information obtained through the MDT, the officers conducted a traffic stop and exited their vehicle. Officer Albertini approached the driver, later determined to be Alexander, while Officer Koehl approached the passenger, a juvenile male who was identified and subsequently sent away from the area.
 {¶ 4} Officer Albertini explained the reason for the stop to Alexander and requested his driver's license. After viewing the driver's license, the officer confirmed that in addition to the sticker expiration, Alexander's license had also expired. At this point, Alexander was asked to step out of the vehicle. As this occurred, Officer Albertini stated he observed Alexander make a furtive movement with a cigarette pack. Officer Albertini said Alexander reached across his body with his right hand and used his left shoulder to push open the driver's side car door, while simultaneously concealing a cigarette pack in the pocket of the driver's door with his left hand After exiting the vehicle, Alexander was patted down for officer safety and placed in the rear of the zone car.
 {¶ 5} Officer Albertini then returned to the vehicle and investigated where Alexander's alleged furtive movement resulted in the concealment of the cigarette pack. Officer Albertini recovered the cigarette pack from the driver's door pocket, and discovered a glass crack pipe inside the pack. Subsequently, Alexander's car was inventoried in preparation for its towing.
 {¶ 6} The trial court suppressed the evidence, chastising the police for running Alexander's license plates when the court felt there were more important quality-of-life issues to attend to in the city of Cleveland
 {¶ 7} The state timely appeals the decision of the trial court advancing one assignment of error for our review.
 {¶ 8} "I. As a matter of law, the trial court erred in granting the defendant's motion to suppress."
 {¶ 9} At a hearing on a motion to suppress, the trial court functions as the trier of fact, inasmuch as the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of the witnesses. Statev. Mills (1992), 62 Ohio St.3d 357. On review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Harris
(1994), 98 Ohio App.3d 543, 546. After accepting such factual findings, the reviewing court must independently determine as a matter of law whether the applicable legal standard has been satisfied. State v. Lloyd (1998), 126 Ohio App.3d 95.
 {¶ 10} The state contends that the officer's search was proper or, alternatively, the state argues the crack pipe would have been "inevitably discovered" through a search of the vehicle. The state reasons that the crack pipe would have been discovered during the inventory done prior to towing the vehicle.
 {¶ 11} Although we recognize the trial court's concern regarding use of police resources for more "quality of life issues" in the city of Cleveland, there is a legitimate governmental interest in insuring that drivers are properly licensed and vehicles are registered and fit for safe operation.[1] Furthermore, a police officer does not need to possess a reasonable suspicion to conduct a random check of a license plate. State v. Rendina, Lake App. No. 2001-L-199, 2001-Ohio-3582. "[A police officer's] check of a person's Bureau of Motor Vehicles records does not implicate Fourth Amendment rights, as it does not involve any intrusion or interruption of travel, or any attempt to restrain or detain him." (Emphasis added.) Id. quoting State v. Freeman, Trumbull App. No. 2001-T-0008, 2002-Ohio-1176. See, also, Rocky River v. Saleh
(2000), 139 Ohio App.3d 313.
 {¶ 12} After running the license plate through the MDT, the officers learned that the license plate sticker had expired giving the officers reasonable suspicion to initiate a traffic stop based on the traffic violation. State v. Bridges, Cuyahoga App. No. 80171, 2002-Ohio-3771. In addition, the officers learned that the license of the vehicle's owner was also invalid. While no testimony was elicited outlining the physical description of the driver as compared to the listed owner, "[i]t is reasonable to assume that the driver of the vehicle is most often the owner of the vehicle." State v. Owens (1991), 75 Ohio App.3d 523,525. Therefore, the initial stop of Alexander's vehicle was proper.
 {¶ 13} Alexander had committed two traffic offenses: first, driving without a valid driver's license in violation of Section 435.01 of the City of Cleveland Codified Ordinances; and second, driving with an expired validation sticker under Section 435.09 of the City of Cleveland Codified Ordinances. Whereas a violation of Section 435.09 is a minor misdemeanor, a violation of 435.01 is a first degree misdemeanor and hence an arrestable offense.
 {¶ 14} Officer Albertini testified that he arrested Alexander for driving without a valid license and planned to tow the vehicle. At that point, an inventory search of Alexander's vehicle was permissible. See State v. Robinson (1979),58 Ohio St.2d 478.
 {¶ 15} Despite the fact that Officer Albertini stated his suspicions were aroused by Alexander's alleged furtive movement with a cigarette pack, we need not decide this case on that basis. As the Supreme Court of Ohio stated in State v. Moore
(2000), 90 Ohio St.3d 47, once a law enforcement officer has probable cause to believe that a vehicle contains contraband, he may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement.Maryland v. Dyson (1999), 527 U.S. 465, 466; United States v.Ross (1982), 456 U.S. 798, 804; State v. Mills (1992),62 Ohio St.3d 357. The analysis of the officers' actions based on probable cause arising out of alleged furtive movements is unnecessary. Here, prior to the recovery of the contraband, the police determined Alexander's license had expired and, regardless of the claimed furtive movement, they intended to tow the vehicle.
"Q. If you had not observed Mr. Alexander open the door inthat odd way, would you have eventually searched the vehicle?
 Yes.
 Q. And pursuant to what standard operating procedure would youdo that?
 Driving without a valid license, and also the sticker beingexpired on the vehicle, it wasn't registered properly.
 Q. Let me rephrase it. You were going to have the vehicletowed, correct?
 Correct.
* * *
Q. Do you always conduct a search on — inventory search beforeyou have a vehicle towed?
 That is part of the city's policy, we have to do that."
 {¶ 16} It is reasonable to do an inventory search before surrendering a car to a towing company in order to insure the proper accounting for the car's contents. State v. Bridges,
Cuyahoga App. No. 80171, 2002-Ohio-3771. Further, Alexander was charged with a misdemeanor of the first degree, an arrestable offense under both the Cleveland ordinance and the comparable state statute.[2] Where an officer has sufficient information, derived from a reasonably trustworthy source, that a person is driving without a license, the officer has probable cause to arrest. State v. Haines, Clermont App. No. CA2003-02-015, 2003-Ohio-6103. While Crim.R. 4(F) allows the officer the option of issuing a summons and releasing the accused, this is discretionary. Even if the officers had decided not to arrest, under the existing police policy on vehicles, the officers had authority to tow the vehicle and perform an inventory search incident to that tow.
 {¶ 17} Alexander argues that the search of the cigarette pack was invalid because an inventory search does not allow for the unguarded search of a container. Alexander urges this court to find that a cigarette pack is a "container" and consequently subject to strict search standards, and that there must exist a standardized policy or practice governing the opening of such containers, citing State v. Mesa (1999), 87 Ohio St.3d 105.
 {¶ 18} Although we agree that a standardized policy or practice on opening closed containers in vehicles is required, a person's expectation of privacy for a cigarette pack is not akin to the expectation of privacy a person has for his luggage or a footlocker. See United States v. Chadwick (1977), 433 U.S. 1. A previously opened cigarette pack is not a "container" in the context that Alexander advances; therefore, no standardized policy is required to open and investigate a cigarette pack that is the subject of an officer's discovery based on an inventory search.
 {¶ 19} Regardless of whether the officers decided to formally arrest or release Alexander with a summons, it was sufficient that Officer Albertini intended to tow the vehicle to authorize the inventory search of the vehicle resulting in the discovery of the contraband Even if a licensed driver had been available, or could have been called to the scene, the vehicle could not be legally moved without an updated registration sticker. As such, the inventory search and seizure of the crack pipe was proper and should not have been suppressed.
 {¶ 20} The trial court's view that Alexander had "thirty days" to renew an expired license is misplaced. Nothing in either C.C.O. 435.01 or R.C. 4507.02 authorizes any extension to legally drive under an expired license. Under R.C. 4507.10, a Bureau of Motor Vehicles registrar is authorized to waive the license examination of anyone presenting an expired license or a license endorsement within six months of the expiration date. The Supreme Court of Ohio addressed the issue of what constitutes an expired license in Kaplysh v. Takieddine (1988), 35 Ohio St.3d 170, where the court held:
"The term `licensed' means: `1. having a license: permitted orauthorized by license * * *.' Webster's Third New InternationalDictionary (1981) 1304. Haifa Takieddine's license to driveexpired on August 1, 1980, pursuant to R.C. 4507.09. The word`expire' is defined as follows: `to come to an end: CEASE: * * *to reach a close (as of a period of time): TERMINATE * * *: tobecome void through the passage of time * * *.' Webster's, supra,at 801. See, also, Frontier-Embers Supper Club, Inc. v. Bd. ofLiquor Control (1960), 112 Ohio App. 325, 328, 15 O.O.2d 393,394, 172 N.E.2d 717, 719. Likewise, Black's Law Dictionary (5Ed. 1979) 519, defines the term `expiration' as: `Cessation;termination from mere lapse of time, as the expiration of alease, insurance policy, statute, and the like. Coming to close;termination or end.' Haifa Takieddine's license to drive expiredtwenty-one days before the accident of August 22, 1980. She wasnot a licensed driver. The fact that she was subsequently issueda license pursuant to R.C. 4507.10 is not relevant. R.C. 4507.10empowers the Registrar of Motor Vehicles to waive, at hisdiscretion, an examination of a person applying for a renewal ofan operator's license. That statute does not serve toretroactively renew a previously expired license."
 {¶ 21} Hence, a motorist has six months to renew an expired license before having to retake the complete driver's license test, but this does not authorize the operation of a vehicle during that period. Further, there is no similar "grace" period for expired license plate stickers, even where the expiration occurs in the middle of the month designated on the sticker.
 {¶ 22} For the above reasons, the sole assignment of error is sustained.
Judgment reversed and case remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J., concurs; Blackmon, J., concurs in Judgmentonly.
[1] See Lewis R. Katz, Ohio Arrest, Search and Seizure, 2001 Ed., p. 329.
[2] Cleveland Codified Ordinance 403.99(I)(5)states: Licensing Drivers. Whoever violates Sections 435.01 to 435.07, inclusive, is guilty of a misdemeanor of the first degree. Alexander was charged under C.C.O. 435.01. R.C. 4507.02, the comparable state statute, which carries the same penalty, is a misdemeanor of the first degree.