OPINION
{¶ 1} Appellant, John M. Hanson, appeals from the April 6, 2005 judgment entry of the Lake County Court of Common Pleas, in which he was sentenced for driving while under the influence of alcohol or drugs ("DUI").
 {¶ 2} On January 21, 2005, appellant was indicted by the Lake County Grand Jury on one count of DUI, a felony of the third degree, in violation of R.C. 4511.19(A)(1). On January 28, 2005, appellant filed a waiver of his right to be present at the arraignment, and the trial court entered a not guilty plea on his behalf.
 {¶ 3} On February 7, 2005, appellant filed a pro se motion to remove his court appointed counsel and requested that the trial court appoint a new, independent counsel that was not affiliated with the public defender's office. A hearing was held on February 16, 2005.
 {¶ 4} At that hearing, appellant began by apologizing for his "ignorance," regarding his desire to waive his indictment, and stated that he tried to make an appointment with his attorney, James C. Mathews ("Attorney Mathews"), on three separate occasions before his preliminary hearing but received no response. Appellant said that he attended the preliminary hearing, but Attorney Mathews did not. He later indicated that another attorney from the public defender's office showed up to represent him and that he waived the preliminary hearing. Appellant alleged that Attorney Mathews was condescending and patronizing. Appellant specifically asked Attorney Mathews to waive his indictment under R.C. 2941.02(1), and maintained that he did not comply with his request.
 {¶ 5} The trial judge said that Attorney Mathews has been before the court on numerous occasions and that he has always been competent and well prepared. The trial judge stated: "[n]ow you haven't indicated anything in your memorandum that allows me to say that you're entitled to another attorney. We're not going to shop around for attorneys and appoint several different attorneys just because you cannot get along."
 {¶ 6} Pursuant to its February 18, 2005 judgment entry, the trial court denied appellant's February 7, 2005 motion.
 {¶ 7} On February 18, 2005, appellant, through Attorney Mathews, filed a motion to suppress all evidence.[1] A suppression hearing was held on March 2, 2005.
 {¶ 8} At the suppression hearing, Officer Jeff Baldrey ("Officer Baldrey"), with the Painesville City Police Department ("PCPD"), testified for appellee, the state of Ohio, that he was on duty on December 21, 2004. Around 1:00 a.m., Officer Baldrey was parked at the entrance of the Argonne Arms Apartments, a high drug area, in Painesville, Lake County, Ohio. He saw a truck enter slowly, then it speeded up as it passed his cruiser. Officer Baldrey observed the truck spin its wheels and then it continued around the complex. He decided to run the license plate which came up expired.
 {¶ 9} At that time, Officer Baldrey initiated a traffic stop of the vehicle that appellant was driving. Appellant immediately exited the truck and began to walk toward the cruiser. Officer Baldrey noticed that appellant was unsteady and leaned against the truck as he moved toward him. Officer Baldrey ordered appellant to get back into the truck. Upon approaching the truck, Officer Baldrey indicated that appellant smelled strongly of alcohol, appeared intoxicated, and had very glassy eyes and slurred speech. After running appellant's information, Officer Baldrey discovered that he had at least nine active license suspensions. He asked appellant to perform several field sobriety tests, but appellant refused. Appellant was then arrested for DUI and transported to the station.[2] Officer Baldrey stated that he had no recollection that appellant ever asked for an attorney, and there was nothing in the police report which indicated that he asked for counsel.
 {¶ 10} On cross-examination, Officer Baldrey testified that he owns a truck and that trucks have a tendency to fishtail because they do not have much weight in the back. He indicated that on the night at issue, the weather conditions were icy. Officer Baldrey said that he read the administered license suspension ("ALS") form to appellant but did not read the portion regarding commercial vehicles.
 {¶ 11} On re-direct examination, Officer Baldrey stated that appellant operated a commercial vehicle, but he presented an Ohio identification card, not a commercial driver's license. Therefore, he did not read the portion of the ALS form regarding commercial vehicles to appellant.
 {¶ 12} Lieutenant Troy Hager ("Lieutenant Hager") with the PCPD testified for appellee that Officer Baldrey brought appellant to the station on December 21, 2004, for DUI. During the reading of the ALS, Lieutenant Hager indicated that appellant became irate and belligerent. He stated that appellant's eyes were bloodshot, his speech was slurred, and he smelled of alcohol. Lieutenant Hager said that appellant never requested an attorney.
 {¶ 13} According to appellant, he told Officer Baldrey that he was driving his boss's vehicle, and that he did not have a license. Appellant testified that he requested an attorney twice when Officer Baldrey mentioned field sobriety tests. At the station, appellant indicated that he was not going to take a breathalyzer test until he spoke with an attorney.
 {¶ 14} On cross-examination, appellant said that he was not familiar with the procedure because he pleaded guilty to every other DUI that he has had in the past. Appellant stated that he went to prison twice for DUI. He indicated that he had three alcoholic drinks earlier that evening but alleged that he was not intoxicated when he was pulled over.
 {¶ 15} Pursuant to its March 7, 2005 judgment entry, the trial court overruled appellant's motion to suppress.
 {¶ 16} A jury trial commenced on March 14, 2005.[3]
 {¶ 17} At the jury trial, Officer Baldrey testified for appellee to the same facts as he did at the suppression hearing. In addition, he stated that when he ordered appellant back into the vehicle, he had difficulty getting into the truck and leaned on the steering wheel. Appellant had difficulty speaking and rambled that he should not have been driving his boss's truck. Officer Baldrey said that appellant declined the Horizontal Gaze Nystagmus ("HGN"), the one-legged stand, and the walk-and-turn. En route to the station, Officer Baldrey indicated that appellant was very angry, yelled profanities, and stated that Officer Baldrey would "regret this[.]" Officer Baldrey filled out the report regarding appellant's demeanor and his refusal to take a breathalyzer test on December 21, 2004, at 2:05 a.m. On cross-examination, Officer Baldrey indicated that besides the spinning of appellant's tires, he did not notice any erratic driving.
 {¶ 18} Lieutenant Hager also testified for appellee at the jury trial to the same facts as he did at the suppression hearing. Additionally, he indicated that Officer Baldrey brought appellant to the station at approximately 1:00 a.m. Lieutenant Hager stated that appellant was belligerent, would not sit down and cooperate, and would not answer whether he would take a breathalyzer test. Lieutenant Hager said it became a safety concern for Officer Baldrey and himself, and that appellant's behavior constituted a refusal to the test. He maintained that appellant appeared to be under the influence of alcohol on the night at issue.
 {¶ 19} At the close of appellee's case, appellant moved for an acquittal pursuant to Crim.R. 29, which was overruled by the trial court. At the close of appellant's case, appellant's counsel renewed the Crim.R. 29 motion, which was overruled by the trial court.
 {¶ 20} On March 17, 2005, the jury returned a verdict of guilty on one count of DUI, a felony of the third degree, in violation of R.C. 4511.19(A)(1). The jury further found that appellant was previously convicted of or pleaded guilty to R.C.4511.19(A), a felony, in the Lake County Court of Common Pleas, Case No. 99-CR-204, in May 1999.
 {¶ 21} On March 17, 2005, appellant filed a pro se motion for new trial pursuant to Crim.R. 33. On March 21, 2005, appellant filed a pro se "Motion for Acquittal Renewed" under Crim.R. 29(C). A hearing was held on March 30, 2005.
 {¶ 22} Pursuant to its April 6, 2005 judgment entry, the trial court denied appellant's motions for acquittal and new trial. The trial court sentenced appellant to serve a prison term of three years, with credit for one hundred days time served; ordered him to pay a fine in the amount of $800; revoked his driver's license for life; and notified him that post release control was optional up to a maximum of three years. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 23} "[1.] [Appellant] received ineffective assistance of counsel, thus denying him his right to counsel under theSixth Amendment of the United States Constitution.
 {¶ 24} "[2.] The [v]erdict issued by the jury was unduly harsh and against the manifest weight of the evidence[.]"
 {¶ 25} In his first assignment of error, appellant argues that he received ineffective assistance of counsel which violated his Sixth Amendment rights. Appellant alleges that his defense counsel failed to timely and properly consult with him concerning his defense; failed to return numerous messages and telephone calls from him; did not appear at his preliminary hearing; did not withdraw as counsel after a conflict of interest had arisen; failed to file a motion for new trial; and failed to properly impeach Officer Baldrey. Appellant stresses that, taken as a whole, the foregoing establishes a pattern consistent with ineffective assistance of counsel.
 {¶ 26} Strickland v. Washington (1984), 466 U.S. 668, 687
states:
 {¶ 27} "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 28} "* * * When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland, supra, at 694, states: "[t]o warrant reversal, `(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"
 {¶ 29} This court stated in State v. Rudge (Dec. 20, 1996), 11th Dist. No. 95-P0-055, 1996 Ohio App. LEXIS 5807, at 35-36, that: "`[s]trategic and tactical decisions will not form the basis of a claim of ineffective assistance of counsel, even if there had been a better strategy available to him. (* * *)' * * * `"Errors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel." * * *.' State v. Lundgren (Apr. 22, 1994), [11th Dist. No. 90-L-15-125, 1994 Ohio App. LEXIS 1722], at 40-41."
 {¶ 30} In the case at bar, appellant's disdain for Attorney Mathews was established at the February 16, 2005 hearing. Based on the record, Attorney Mathews did not fail to timely and properly consult with him concerning his defense or to return messages and telephone calls. Appellant asked his counsel to waive his indictment. Attorney Mathews responded that that was not the procedure they followed. However, appellant was not satisfied with that answer. After pressing the issue, appellant's counsel called and discussed the matter with the prosecutor's office. Appellant admitted at the hearing that he had misunderstood the procedure and apologized for his ignorance. Also, appellant stated that he had conversed with his attorney on several occasions and that the real underlying problem revolved around a personality conflict.
 {¶ 31} In addition, although Attorney Mathews was not present at appellant's preliminary hearing, he sent another attorney from his office to represent him. Also, at the February 16, 2005 hearing, the trial court explained to appellant why his counsel did not have permission to withdraw from the case. Again, the trial judge indicated that Attorney Mathews was competent and well prepared, and stressed that appellant could not "shop around" for other attorneys simply because he could not get along with him. Additionally, pursuant to Rudge and Lundgren,
supra, we cannot say that appellant's counsel was ineffective for failing to file a motion for new trial. Based on the record and Attorney Mathews' professional judgment, there was not a credible basis for a new trial.
 {¶ 32} Lastly, appellant's contention that Attorney Mathews was ineffective for failing to impeach Officer Baldrey is not well-taken. Appellant alleges that Officer Baldrey's testimony at trial was substantially different from that at the suppression hearing, and, thus, should have been challenged by his attorney. We note, however, that appellant fails to point to any specific inconsistencies.[4] "[W]e cannot infer ineffective assistance from a silent record; rather, appellant bears the burden of proving ineffective assistance." State v. Galloway,
11th Dist. No. 2000-L-079, 2002-Ohio-4358, at ¶ 49, citing Statev. Murphy (2001), 91 Ohio St.3d 516, 542.
 {¶ 33} Viewing the totality of the circumstances presented to this court, it is evident that none of appellant's alleged instances of ineffective assistance support a claim of ineffective assistance of counsel. Pursuant to Strickland,
supra, appellant fails to show that his counsel's performance was deficient and that the deficient performance prejudiced the defense. Appellant's first assignment of error is without merit.
 {¶ 34} In his second assignment of error, appellant contends that his conviction was against the manifest weight of the evidence. Appellant alleges that the officer did not have proper grounds for making the traffic stop, since he did not violate any traffic laws. Also, appellant argues that the jury failed to take into account the weather conditions on the night at issue.
 {¶ 35} As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L0-82, 1994 Ohio App. LEXIS 5862, at 13-15:
 {¶ 36} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 37} "* * *
 {¶ 38} "* * * `[M]anifest weight' requires a review of the weight of the evidence presented, not whether the state has offered sufficient evidence on each element of the offense.
 {¶ 39} "`In determining whether the verdict was against the manifest weight of the evidence, "(* * *) the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. (* * *)"' (Citations omitted.) * * *" (Emphasis sic.)
 {¶ 40} A judgment of a trial court should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
 {¶ 41} In the case sub judice, Officer Baldrey properly ran the license plate number of the truck that appellant was driving even though appellant did not commit a traffic offense at that time. See State v. Rendina, 11th Dist. No. 2001-L-199, 2002-Ohio-3582, at ¶ 10 (holding that "a police officer does not need to possess reasonable suspicion to conduct a random check of a license plate.") After running the license plate number and discovering that the plates had expired, Officer Baldrey then had sufficient grounds to stop the vehicle that appellant was driving. See State v. Brownlie (Mar. 31, 2000), 11th Dist. Nos. 99-P-0005 and 99-P-0006, 2000 Ohio App. LEXIS 1450, at 6 (holding that a police officer may make a limited traffic stop after witnessing a minor traffic violation); State v. Alexander, 8th Dist. No. 83848, 2004-Ohio-3735, at ¶ 12 (holding that officers had a reasonable suspicion to initiate a traffic stop after learning that the appellee's license plates had expired); andState v. Mapes, 6th Dist. No. F-04-031, 2005-Ohio-3359, at ¶ 39 (holding that the officer was justified in executing a traffic stop after discovering that the appellant's license plate had expired.) The argumentation by appellant on this particular issue deals with a question of law for probable cause to stop which is not a fact question for the jury and/or an issue per se in a manifest weight analysis. See, generally, State v. Porter
(Sept. 15, 2000), 11th Dist. No. 99-P-0061, 2000 Ohio App. LEXIS 4211.
 {¶ 42} Again, Officer Baldrey testified that appellant immediately exited the truck and began to walk toward the cruiser; appellant was unsteady and leaned against the vehicle; he ordered appellant to get back into the truck; indicated that appellant smelled strongly of alcohol, appeared intoxicated, and had very glassy eyes and slurred speech; asked appellant to perform several field sobriety tests, but appellant refused; and before leaving the scene, he examined the truck that appellant was driving which smelled strongly of alcohol and contained a plastic cup with some form of hard liquor in it.
 {¶ 43} Based on the totality of the circumstances, Officer Baldrey was justified in placing appellant under arrest for DUI. Although the slippery weather conditions on the night at issue could have affected appellant's ability to perform some of the field sobriety tests, it would not have affected his ability to perform the HGN, whereby Officer Baldrey would have examined appellant's eyes for a bouncing of the eyeball. However, appellant still refused to allow Officer Baldrey to examine his eyes. Also, the weather conditions were no longer an issue, when after arriving at the police station, appellant refused to take a breathalyzer test. Pursuant to Schlee and Thompkins, supra, the jury did not clearly lose its way in convicting appellant of DUI. Appellant's second assignment of error is without merit.
 {¶ 44} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
Cynthia Westcott Rice, J., Colleen Mary O'Toole, J., concur.
[1] In his motion, appellant alleged that there was no probable cause to justify his arrest; that the unlawful detention violated his constitutional rights to due process and against unreasonable search and seizure as guaranteed by the Fourth, Fifth, andFourteenth Amendments to the United States Constitution, and Sections 10 and 14, Article I of the Ohio Constitution; and that his statutory right to counsel was violated when his request to call an attorney prior to submitting to the breathalyzer test was ignored.
[2] After he ordered the tow, Officer Baldrey searched the truck and observed a large plastic cup which spilled liquid onto the seat. He stated that it smelled like whiskey.
[3] The parties stipulated that on May 26, 1999, appellant pleaded guilty to DUI, a felony of the fourth degree, in violation of R.C. 4511.19(A)(1), in Case No. 99-CR-204.
[4] Although appellant fails to specify the exact testimony that he claims was inconsistent, a review of the record shows an instance concerning an inconsistency with respect to Officer Baldrey which focused on the length of time he had observed appellant before pulling him over. However, Attorney Mathews did attempt to impeach Officer Baldrey's testimony. Specifically, Officer Baldrey testified at the jury trial that he activated his lights about twenty to thirty seconds before pulling appellant over. Appellant's counsel then asked Officer Baldrey if he recalled testifying earlier at the suppression hearing that it might have been thirty to forty-five seconds. In addition, Attorney Mathews attempted to show inconsistencies in Officer Baldrey's testimony regarding whether the commercial portion of the ALS form was read to appellant.