DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment issued by the Lucas County Court of Common Pleas in favor of plaintiffs-appellees, Lisa and Shane Smith, in a case involving insurance coverage issues.
 {¶ 2} On July 4, 2003, Lisa and Shane Smith were involved in a single car accident along a freeway in Toledo, Ohio. At the time of the accident, Shane was driving a 2001 Ford Escape that was owned by both Shane and Lisa. As a result of the accident, *Page 2 
the car was damaged and Lisa sustained an injury to her wrist and chemical burns to her face from the airbag deployment. Following the accident, the car was towed to Granger's Body Shop.
 {¶ 3} At the time of the accident, Lisa Smith was the named insured under an automobile insurance policy issued by defendant-appellant, Safe Auto Insurance Company. That policy covered the 2001 Ford Escape and listed Shane Smith as an additional driver. Later, on the day of the accident, Lisa Smith telephoned Safe Auto to report the accident and notify the company of the pending claim.
 {¶ 4} Relevant to the present case, the "General Provisions" section of the policy included the following provision under the heading "Valid Driver License:"
 {¶ 5} "No coverage is afforded under any section of this policy if thecovered auto is being operated by a person who is not a qualified, licensed driver, or is without a valid driver license, or whose driver license is expired, revoked or suspended, or is in violation of any condition of their driving privileges, or is without privileges to drive for any reason."
 {¶ 6} Shane Smith was born on June 20, 1971. His driver's license had expired on his birthday in 2003. Shane, however, did not renew his driver's license until July 7, 2003, three days after the accident. In his investigation of the claim, Mike Bell, a claims representative of Safe Auto, learned from the BMV that Shane's driver's license was expired at the time of the accident. He then submitted a request to his supervisor to deny the claim. Prior to receiving approval for the denial, however, Bell sent Ron Meeker of *Page 3 
Property Damage Appraisers to Granger's Body Shop to prepare a damage estimate. The estimate that was prepared by Meeker is dated July 10, 2003, and expressly states under the heading on the first page:
 {¶ 7} "The appraiser does not have the authority to authorize repairs or guarantee payment to any business or individual. Estimates are subject to review by the insurance company for final approval. This is not an authorization to repair. All payment and authorization for repairs are the sole responsibility of the vehicle owner. No supplements will be honored without prior inspection by the appraiser and approval by the insurance company."
 {¶ 8} Bell received approval to deny the claim on July 8, 2003, and immediately sent a letter to Lisa Smith informing her of the denial. Lisa called Bell on July 21, 2003, questioning the denial and informing him that she would be hiring an attorney.
 {¶ 9} Despite the language on the repair appraisal, Granger's began the repairs to the vehicle on July 10, 2003. Michael Granger, the vice president of Tri-Level, Incorporated, d/b/a Granger's Automotive, testified at his deposition that he began the tear down of the vehicle after he received a verbal authorization from the Smiths to begin the work. He also stated that because Safe Auto sent an appraiser to review the damage, he believed that the claim was being processed. Subsequently, Michael Granger contacted Ron Meeker to inform him that the vehicle needed additional repairs. Meeker returned to Granger's on two occasions to prepare supplemental estimates. He did not know at that time that the claim was being denied. The supplemental estimates again *Page 4 
contained the warning that the estimate was not an authorization to repair. Shane Smith did, however, sign the estimate dated July 22, 2003, which Granger's viewed as an authorization to repair. Smith did not inform Granger's that he and Lisa had received a denial letter. After the repairs were completed, Granger's learned that the repairs would not be covered. Ultimately, Granger's obtained title to the vehicle after it was determined to be unclaimed and the Smiths paid off the balance on the loan that covered the vehicle.
 {¶ 10} On September 30, 2004, the Smiths filed a complaint against Safe Auto seeking a declaratory judgment setting forth the rights and obligations of the parties under the insurance contract and a judgment on the grounds of equitable estoppel. On the equitable estoppel claim, the Smiths asserted that Safe Auto, acting by or through its agents and employees, authorized Granger's to proceed with the repairs to the vehicle and then refused to pay for those repairs.
 {¶ 11} Subsequently, Safe Auto filed a motion for summary judgment in which it asserted that pursuant to the clear and unambiguous "Valid Driver's License" exclusion provision of the policy quoted above, the Smiths were not entitled to collision coverage or uninsured/underinsured motorist coverage. On the Smiths' claim for damages under the theory of equitable estoppel, Safe Auto asserted that the undisputed facts clearly showed that the written appraisals for the damages to the Smiths' car, which were prepared for Safe Auto by Property Damage Appraisers, did not authorize repairs. Rather, the Smiths authorized repairs despite the notice on the appraisal and continued to authorize repairs well past the time when they knew that their claim was being denied. *Page 5 
Accordingly, Safe Auto asserted, the Smiths could not establish the elements of a claim based on equitable estoppel.
 {¶ 12} In their memorandum in opposition, the Smiths asserted that at the time of the accident, Shane was a valid insured because under Ohio law, R.C. 4507.10(B), a driver whose license has expired can renew his driver's license within six months of the expiration date without penalty. Because Shane renewed his license within the grace period, the Smiths asserted that they were entitled to coverage under their insurance policy. At the very least, the Smiths argued that an ambiguity existed in the insurance contract as to whether the term "expired" means expired within or beyond the grace period set forth in R.C. 4507.10(B). On their claim based on equitable estoppel, the Smiths asserted that because Safe Auto issued supplemental appraisals after the repairs were started, a jury could conclude that Safe Auto either expressly or tacitly approved the repairs. They also supported their memorandum in opposition with the affidavit of Donald Granger, the president of Tri-Level, Inc., d/b/a Granger's Automotive, in which he asserted that the Smiths and the appraiser sent by Safe Auto to estimate damages, authorized the repairs.
 {¶ 13} In an opinion and judgment entry of November 15, 2006, the lower court denied Safe Auto's motion for summary judgment on the ground that genuine issues of material fact remained regarding whether Safe Auto, through its appraiser, authorized the repairs to the Smiths' vehicle. The court did not address the issue of whether insurance coverage should be denied because Shane Smith's driver's license had expired at the time *Page 6 
of the accident. Accordingly, in a judgment entry of May 8, 2007, the court addressed that issue and determined that because the Smiths had no notice from Safe Auto to the contrary, a valid insurance policy was in effect at the time of the accident. The court cited Whitacre v. SafeAuto Ins. Co., 2d Dist. No. 2006-CA-10, 2006-Ohio-7084, in support of its judgment. In response, Safe Auto filed a motion for reconsideration, which the court denied in an entry of July 2, 2007. Then, in an entry of July 9, 2007, the court held, without further explanation that "[a]fter a further full and careful consideration of all of the motions filed, the case law contained therein, further arguments of counsel, the prior rulings of this court, and all of the facts presented thus far, the Court finds that the plaintiffs are not in violation of the clear and unambiguous terms of the policy."
 {¶ 14} On July 9, 2007, the case initially proceeded to trial. The parties, however, then stipulated to the amount of damages and the Smiths filed a motion for summary judgment on the issue of damages. While stipulating to the amount of the Smiths' damages, Safe Auto continued to contest their right to an award. The case never proceeded to trial, and the court entered a judgment for the Smiths pursuant to the collision coverage in the amount of $10,514.28 and awarded Lisa Smith $2,700 pursuant to the uninsured motorist coverage in the policy.
 {¶ 15} Safe Auto now challenges the judgments entered by the court below through the following assignments of error: *Page 7 
 {¶ 16} "[1]. The trial court erred when it denied appellant's motion for summary judgment as plaintiff was in breach of the clear and unambiguous terms and conditions of the insurance contract issued to plaintiff.
 {¶ 17} "[2]. Appellant was entitled to summary judgment as to the second count of appellee's complaint, as the appellee, Shane Smith, was the person who authorized repairs to the vehicle, and the trial court erred in denying summary judgment."
 {¶ 18} In reviewing a ruling on a motion for summary judgment, this court must apply the same standard as the trial court. Lorain Natl. Bankv. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue as to any material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C).
 {¶ 19} Safe Auto's first assignment of error challenges the lower court's ruling on the issue of insurance coverage under the policy at issue. Safe Auto argues that, pursuant to the valid exclusion in the policy, the Smiths are not entitled to collision or uninsured motorist coverage because Shane Smith's driver's license had expired at the time of the accident. The Smiths counter that, because R.C. 4507.10(B) provides a six-month grace period for renewing an expired license without penalty, Shane Smith was a valid insured at the time of the accident. The lower court determined that the Smiths were not in violation of the terms of the policy and were therefore entitled to coverage under both the collision and uninsured motorist provisions of the policy. *Page 8 
 {¶ 20} "In Ohio, insurance contracts are construed as any other written contract." Andray v. Elling, 6th Dist. No. L-04-1150,2005-Ohio-1026, ¶ 18, citing Hybud Equip. Corp. v. Sphere Drake Ins.Co., Ltd. (1992), 64 Ohio St.3d 657, 665. If the language of the policy is clear and unambiguous, there are no issues of fact and interpretation is a matter of law. Inland Refuse Transfer Co. v. Browning-FerrisIndustries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322, citingAlexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241. Conversely, policies that are "reasonably susceptible of more than one interpretation, * * * will be construed strictly against the insurer and liberally in favor of the insured." Lane v. Grange Mut. Cos. (1989),45 Ohio St.3d 63, 65. Whether a policy is clear and unambiguous or requires interpretation is, therefore, a proper issue for summary judgment.
 {¶ 21} The policy at issue provided the Smiths with both collision coverage and uninsured/underinsured motorist coverage. Under both the collision, or physical damage coverage, and uninsured/underinsured motorist coverage portions of the policy, the policy expressly states: "In addition to the exclusions listed here, the exclusions listed under the general provisions of this policy also apply." As stated above, the general provisions of the policy include the valid driver's license exclusion at issue herein.
 {¶ 22} In Kaplysh v. Takieddine (1988), 35 Ohio St.3d 170, the Ohio Supreme Court addressed the very issue that is now before this court. In that case, Haifa Takieddine was driving her brother-in-law, Rafik Takieddine, to a doctor's office in a vehicle that Rafik had rented, when they were involved in an accident. At the time of the *Page 9 
accident, Haifa was driving on a license that had expired approximately 22 days prior. She then renewed her license six days after the accident, as permitted by R.C. 4507.10(B). When Rafik rented the car, he purchased automobile insurance which provided: "Under no circumstances shall vehicle be used by, operated or driven * * * (F) by any person except Renter, or a qualified licensed driver provide Renter's permission be first obtained." The court was asked to determine whether Haifa, as a driver with an expired driver's license, was a "qualified licensed driver," as that term was used in the rental agreement. As in this case, the appellant asserted that because Haifa was able to renew her expired license four days after the accident without an examination, pursuant to R.C. 4507.10(B), she was qualified. The court, however, concluded that she was not. The court looked to the ordinarily accepted meanings of the words "licensed," "expire," and "expiration" as follows:
 {¶ 23} "The term licensed' means: `1. having a license: permitted or authorized by license * * *.' Webster's Third New International Dictionary (1981) 1304. Haifa Takieddine's license to drive expired on August 1, 1980, pursuant to R.C. 4507.09. The word `expire' is defined as follows: `to come to an end: CEASE: * * * to reach a close (as of a period of time): TERMINATE * * *: to become void through the passage of time * * *.' Webster's, supra, at 801. See, also, Frontier-Embers SupperClub, Inc. v. Bd. of Liquor Control (1960), 112 Ohio App. 325, 328 * * *. Likewise, Black's Law Dictionary (5 Ed. 1979) 519, defines the term `expiration' as: `Cessation; termination from mere lapse *Page 10 
of time, as the expiration of a lease, insurance policy, statute, and the like. Coming to close; termination or end.'" Kaplysh, supra at 385.
 {¶ 24} Based on the ordinarily accepted meaning of these words, the court held that Haifa was not a licensed driver at the time of the accident and the fact that she subsequently renewed her license within the grace period was irrelevant. Id. Accordingly, the court held that the insurance agency was not required to indemnify and defend Haifa.
 {¶ 25} We find Kaplysh directly on point and conclude that, because Shane Smith's driver's license had expired at the time of the accident, the losses sustained by the Smiths were not covered under the policy at issue. The trial court cited Whitacre, supra, in support of its conclusion that the Smiths had not violated in terms of the insurance policy. A full review of that case, however, reveals that it supports an opposite conclusion. That case involved a "Valid Driver's License" exclusion identical to that involved in the present case. Also, the driver/insured in that case failed to renew her driver's license prior to being involved in a motor vehicle accident. Although the insurance company had sent its insured a notice of nonrenewal due to her failure to renew her driver's license, the accident occurred while the policy was still in effect. Nevertheless, the court determined that the facts of the case fell squarely within the "Valid Driver's License" exclusion. That is, although the policy itself was still in force and effect, the accident was excluded from coverage. *Page 11 
 {¶ 26} Reading the clear and unambiguous language of the insurance contract at issue, is it is clear that the Smiths were not entitled to collision or uninsured motorist coverage for the damages they sustained as a result of the accident because Shane Smith's driver's license had expired at the time of the accident. The fact that he renewed his license three days after the accident is irrelevant. Accordingly, the trial court erred in failing to grant Safe Auto summary judgment on the Smiths' claims under the insurance contract. The first assignment of error is well-taken.
 {¶ 27} In its second assignment of error, Safe Auto asserts that it was further entitled to summary judgment on the Smiths' equitable estoppel claim. In the proceeding below, the court denied Safe Auto's motion on this claim upon determining that genuine issues of material fact remained regarding who authorized Granger's Body Shop to begin the repairs to the Smiths' vehicle. Subsequently, however, the court determined that the Smiths' losses were covered under their Safe Auto policy and the claim based on equitable estoppel became moot. In response to Safe Auto's assertion, the Smiths contend that if this court determines that their losses were not covered by the policy, then they are entitled to a jury determination of their claim based on equitable estoppel.
 {¶ 28} We first note that "`equitable estoppel' is not an independent cause of action, but rather is a device by which courts bind parties to presentments made upon which an opposing party relies to his detriment for the formation of a contract." Cleveland v. Village ofMarblehead (Mar. 23, 2001), 6th Dist. No. OT-00-018, citing 2 Williston on Contracts 749 (1991); First Federal S. L. Assn. v. Perry's Landing,Inc. *Page 12 
(1983), 11 Ohio App.3d 135, 144-145. "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." Ohio State Bd. of Pharmacy v. Frantz (1990),51 Ohio St.3d 143, 145. "To show a prima facie case for application of equitable estoppel, a plaintiff must show that (1) the defendant made a factual misrepresentation, (2) that is misleading, (3) that induces actual reliance that is reasonable and in good faith, and (4) that causes detriment to the relying party." Walworth v. BP Oil Co. (1996),112 Ohio App.3d 340, 345.
 {¶ 29} The undisputed facts of this case establish that although Safe Auto initially sent an appraiser to evaluate the damages to the vehicle, that appraisal contained the caveat in clear unambiguous terms that "the appraiser does not have the authority to authorize repairs or guarantee payment to any business or individual." Subsequent appraisals were prepared upon Granger's request when additional repairs were required. The Smiths point to the affidavit of Donald Granger, the president of Granger's, in support of their position that Safe Auto approved the repairs to the vehicle. In his affidavit, Donald Granger stated: "After numerous conversations between the Smiths and Safe Auto insurance, Safe Auto sent a property damage appraiser to estimate damages to the vehicle and said appraiser authorized Granger's to begin the repairs. * * * The Smiths also authorized the repairs." When questioned about this affidavit at his deposition, however, Donald Granger admitted that he had no personal knowledge of the statements made therein. Furthermore, the only signature on any estimate in the record appears to be that of Shane Smith on the estimate dated July 22, 2003. This estimate again contained *Page 13 
the warning that the appraiser had no authority to authorize repairs. This estimate was also signed after the Smiths had been notified by Safe Auto that their claim was being denied. Finally, the Smiths contend that because Safe Auto issued supplemental appraisals after Granger's began the repairs, a jury could conclude that Safe Auto had tacitly approved the repairs. A review of the record reveals, however, that the supplemental appraisals were prepared by Ronald Meeker of Property Damage Appraisers after Granger's contacted him regarding additional repairs needed for the vehicle. After he reported the first supplemental appraisal to Safe Auto, Meeker learned that the claim was not going to be paid and he was directed by Safe Auto to finalize. He then returned to Granger's to write up a final appraisal.
 {¶ 30} Upon a review of the record, it is clear that Safe Auto made no factual misrepresentations to the Smiths that would lead them to believe that Safe Auto would pay for the repairs to their vehicle. Clearly some misunderstanding occurred between the Smiths and Granger's and between Granger's and Property Damage Appraisers, but the Smiths can point to no evidence from which a reasonable person could conclude that Safe Auto authorized, either expressly or tacitly, the repairs to their vehicle. Michael Granger believed that because an appraiser had been sent to evaluate the damages to the car, the repairs were authorized. The appraisal, however, clearly stated that the appraiser had no authority to authorize repairs. Accordingly, the Smiths did not establish a prima facie case of equitable estoppel and Safe Auto was entitled to judgment on the Smiths' second cause of action. The second assignment of error is well-taken. *Page 14 
 {¶ 31} On consideration whereof, the court finds that substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas is reversed. Pursuant to App. R. 12(B) we hereby enter judgment in favor of Safe Auto on all of appellees' claims against it. Appellees are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Thomas J. Osowik, J., CONCUR. *Page 1